Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Exhibit NM-B

## *COMMERCIAL SECURITY AGREEMENT*

*Secured Party:*

**North Mill Credit Trust**

*9 Executive Circle, Suite 230*
*Irvine, CA  92614*

*For Office Use Only:*

Contract Number: 6338
Agreement Date: December 22, 2022
Term Commencement Date: 01/03/2023
First Loan Payment Due Date: 02/03/2023
Acceptance Date: 01/03/2023

### *Debtor Information*

*Debtor's Full Legal Name:* Ancora Services Corporation
*Debtor's Address:*

*Equipment Location (if different):*

### *Collateral*

See Schedule A at the end of this Security Agreement for Collateral description. Collateral includes all attachments, accessions, additions, improvements and replacements thereto and therefor, and all proceeds including insurance proceeds thereof and therefrom. Debtor authorizes Secured Party to insert factual information regarding the Collateral, most specifically the serial or VIN numbers, if applicable, into Schedule A

### *Summary of Payment Terms*

*Loan Term (months):* 57
*Amount of Loan Payment:* 57 @ $804.59

*Documentation and Administration Fee:* $600.00
*Payment Period:* Due in Arrears: __X__

### *Additional Provisions*

### *Terms and Conditions*

*This Commercial Security Agreement including any riders, addenda and schedules hereto (this "Agreement") is made by the Debtor named above ("Debtor") in favor of North Mill Credit Trust ("Secured Party"). In consideration of the premises and mutual covenants hereinafter set forth, and intending to be legally bound, the parties hereto agree as follows:  The Loan:  Debtor hereby promises to pay to the order of Secured Party at its address above in lawful money of the United States of America in immediately available funds, the total number of Loan Payments indicated above which includes principal and interest pre-computed over the above Loan Term (the "Loan"). The Loan shall be payable in consecutive installments as indicated above, due and payable in arrears on the same day of each month beginning with the month following the month in which the Term Commencement Date (as hereinafter determined) occurs and continuing on the same day of each payment period thereafter until fully paid (for the avoidance of doubt, if the Term Commencement Date is the last day of a month, the payments shall be due on the last day of each subsequent month regardless of the number of days in said month). Installment payments shall be applied first to interest and then to principal. The Term Commencement Date shall be the date on which Secured Party disburses Loan funds.  If any installment is not paid on the date when due, Secured Party may impose a late charge of up to 5% of the amount of the installment but in any event not more than permitted by applicable law. Any returned check or dishonored payment shall be subject to a $50 fee payable by Debtor, but not more than permitted by law, to cover bank and administrative expenses incurred by Secured Party. Debtor further agrees to pay to Secured Party the Documentation and Administration fee set forth above at the time the Loan is funded to cover the expenses of originating this Loan. Debtor hereby authorizes and requests Secured Party to initiate electronic debit entries via automated clearing house with its financial institution, and Debtor will authorize its bank to honor the debit entries initiated by Secured Party. This authority pertains to any amounts due under this Agreement and any related ancillary documentation. Upon at least ten days prior written request by Debtor and provided there is no existing Event of Default, Debtor may prepay the outstanding balance under the Loan at any time by payment of the then outstanding principal balance of the Loan plus accrued interest and any other outstanding unpaid charges due upon termination of the Loan, including any applicable termination fee, together with a prepayment premium of 8% of the outstanding principal balance if termination occurs during the first year of the Loan, 4% if during the second year of the Loan, 2% if during the third year and 0% thereafter; provided, however, if the prepayment occurs after Debtor has timely and properly paid by ACH debit, at least the last 18 consecutive Loan Payments up to the time of Loan prepayment with no Event of Default then existing, no prepayment premium shall be payable. The foregoing voluntary prepayment provisions do not apply with respect to a casualty to Equipment. Debtor agrees that, if any vendor or supplier (collectively a "Vendor") requires payment, in part or in full, for the Collateral, Secured Party is authorized to disburse such payment(s) and Debtor shall immediately commence making payments under this Agreement, in the case of a partial payment to the Vendor, in an interim  (accruing until the Term Commencement Date and which you hereby agree to pay on the Term Commencement Date) pro rata amount of the monthly Loan Payment hereunder based upon the amount paid to the Vendor and, in the case of full or final payment to the Vendor, in the full amount of the monthly Loan Payment hereunder and the date that Secured Party has paid the aggregate full amount to any such Vendor shall be the Term Commencement Date for this Agreement, as defined herein.  In the event that Secured Party makes any such payment to any Vendor, Debtor agrees that its Obligations under this Agreement are non-cancellable for any reason, including delay for failure to supply the Collateral, any defects in the Collateral, unsuitability of the Collateral for Debtor's purposes, the bankruptcy, merger, dissolution, liquidation of the Vendor, any*

misrepresentation of the Vendor or any other claim against Vendor. Secured Party shall not be required to make any payment(s) to Vendor until all conditions required by Secured Party in its sole and absolute discretion have been satisfied.

**THIS AGREEMENT INCLUDES THE TERMS ON THE ATTACHED PAGES.**

**DEBTOR WAIVES TRIAL BY JURY IN ANY ACTION ARISING OUT OF OR RELATED TO THIS AGREEMENT AND AGREES TO THE CHOICE OF LAW AND VENUE.**

**Debtor: Ancora Services Corporation**
*Carlos Michael Arteaga* (DocuSigned, 4F212D88DF51451)
Authorized Signature

Carlos Michael Arteaga  President    12/27/2022
Print Name and Title                 Date

**Secured Party: North Mill Credit Trust**
*Jim Cavallaro* (DocuSigned, B107139C963042C)
Authorized Signature

James Cavallaro    VP    1/3/2023
Print Name and Title           Date

**THIS COMMERCIAL SECURITY AGREEMENT IS NON-CANCELLABLE AND IRREVOCABLE.**

**1. Security Interest.** Debtor hereby grants to Secured Party, its successors and assigns, a first priority security interest in the personal property described above, together with all accessories, attachments and accessions now or hereafter affixed thereto and all substitutions, insurance proceeds, cash or non-cash proceeds, products and rents therefrom and replacements thereof (collectively, the "Collateral"), and any other collateral in which a security interest has been or is hereafter granted to Secured Party by Debtor, to secure the performance and payment of all liabilities, obligations and indebtedness of Debtor to Secured Party, either direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising under this Agreement or any other financing or lease documents and/or instruments (collectively, the "Obligations"); provided, however, that, if any Obligations are assigned or pledged by Secured Party to an assignee or financing source, the foregoing cross-collateralization provisions shall only apply, with respect to each such assignee or financing source, to Collateral and any other collateral securing the specific Obligations assigned or pledged to such assignee or financing source and not to Collateral or any other collateral securing Obligations retained by Secured Party or assigned or pledged to another assignee or financing source. If Secured Party's written approval of this transaction contained a requirement that Debtor purchase a specified warranty on the Collateral, then Debtor shall purchase such warranty effective on the commencement of the term hereof and maintain such warranty in effect, without modification, for the entire warranty period covered, including proper maintenance and use of the Collateral in the condition and manner, and with vehicle service providers, required under the terms of such warranty.

**2. Collateral Location.** Debtor hereby represents, warrants and covenants that the Collateral shall be kept in Debtor's possession (if a vehicle, permanently garaged), except as hereinafter provided, at the address of Debtor referenced above ("Property"). Secured Party shall be entitled to inspect the Collateral and all records relating to it at any time during reasonable business hours. Any vehicles constituting Collateral shall be operated only in, and shall not at any time be removed from, the continental United States and, upon Secured Party's request, Debtor shall promptly provide to Secured Party the then location of any such vehicles. Debtor agrees that the Collateral may have installed on it, or Secured Party may at its option, exercisable at any time, install on the Collateral, one or more GPS or other tracking device(s) to enable Secured Party to determine the location of the Collateral. Debtor further agrees that Secured Party may use the locate function during the term of this Agreement to verify and maintain the operational status of the tracking device and technology, to locate the Collateral to service the tracking device or keep it current or for repossession purposes if there is a default under this Agreement or if the Collateral is ever stolen. Secured Party will not use the tracking device for unlawful or otherwise improper uses, including, without limitation monitoring (except as herein provided) the location of the Collateral, Debtor's personal (or identifiable) driving habits, disabling the Collateral, or for any purpose other than the legitimate business purposes described herein. Debtor agrees that Secured Party may use electronic self-help to repossess the Collateral with such notice, if any, as may be permitted or required by applicable law, which notice will also describe the applicable default under this Agreement, and will include the name, title, address, and telephone number of a person representing Secured Party with whom Debtor may communicate about Secured Party's interest in the Collateral. Debtor voluntarily waives any right Debtor may have to privacy in the location of the Collateral during the term of this Agreement. Debtor shall not remove, disable or otherwise alter or modify any such tracking device or interfere in any manner with its proper operation or its use by Secured Party in determining the location of the Collateral. Secured Party shall have the right, at any time, to examine, modify, remove, repair, upgrade and/or replace any such tracking device and Debtor shall give Secured Party access to the Collateral at any time requested by Secured Party for any such purpose. Each such tracking device shall remain the sole and exclusive property of Secured Party and Debtor shall be responsible for any loss or damage to it during the Loan Term. Upon termination of the Loan for any reason, Secured Party shall have the right to remove and retain any and all such tracking devices.

**3. No Warranty.** Secured Party accepts no responsibility for material and equipment or for the acts of Debtor or its customers, nor will it be responsible in any way for the Collateral or the performance thereof. DEBTOR UNDERSTANDS AND AGREES THAT SECURED PARTY IS NOT AFFILIATED WITH THE MANUFACTURER OR SELLER OF THE COLLATERAL AND MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE COLLATERAL, ITS MERCHANTABILITY, ITS FITNESS FOR A PARTICULAR PURPOSE, OR WITH RESPECT TO INFRINGEMENT OR THE LIKE. DEBTOR ACKNOWLEDGES THAT SECURED PARTY HAS NOT MADE ANY OTHER REPRESENTATIONS, PROMISES OR OFFERED OTHER INDUCEMENTS TO DEBTOR EXCEPT AS SET FORTH IN THIS AGREEMENT.

**4. Covenants and Agreements.** Debtor warrants, covenants and agrees as follows: A) To pay and perform all of the Obligations according to their terms; B) On demand of Secured Party, to execute any written agreement or do any other acts necessary, at Debtor's expense, to effectuate the purposes and provisions of this Agreement (including executing and causing to be filed in a timely manner and, in any event, no later than ten (10) days after Secured Party's request, any applications and other documents necessary to reflect Secured Party as sole lienholder on the certificates of title for any vehicles constituting Collateral and immediately upon issuance delivering or causing to be delivered the originals of such certificates of title to Secured Party, it being acknowledged and agreed by Debtor that, in addition to any and all other rights and remedies of Secured Party, Secured Party shall have the right to charge an unprocessed title fee up to $1,000 in the event that Debtor fails to comply with the foregoing); C) Not to sell, exchange, assign, pledge, loan, lease, rent or otherwise abandon, transfer or dispose of such Collateral or remove the Collateral from the Property (except in the usual course of business for temporary periods) without the written consent of Secured Party; D) To keep the Collateral free and clear of all liens, charges and encumbrances; E) To pay, when due, all taxes, assessments, and license fees relating to the Collateral; F) To keep the Collateral, at Debtor's own cost and expense, in good repair and condition; G) To immediately notify Secured Party in writing of any change in or discontinuance of Debtor's place or places of business, legal structure, name or jurisdiction in which it is organized or any change of majority ownership interest in or control of Debtor; H) To defend, indemnify and hold harmless Secured Party, its successors and assigns, employees, officers, owners and agents from and against any and all losses, damages, claims or suits for any loss, damage, or injury sustained by any person by reason of this Agreement or any breach hereof and/or the sale, financing, possession, use or disposition of the Collateral, and Debtor shall pay all legal fees and all other reasonable costs and expenses incurred by Secured Party; and I) That any vehicles constituting Collateral will not be used in the transport of material designated as extra hazardous, radioactive, flammable or explosive and will be operated only

by drivers who are qualified and properly licensed in accordance with the laws of the jurisdictions where such vehicles are used, and Debtor will comply, and cause all persons operating such vehicles to comply, with all applicable requirements of law relating to the licensing, maintenance and operation of such vehicles, all Federal and state laws and regulations, now existing and hereafter enacted, regarding emissions reduction and control (including, if in California, the California Air Resources Board Regulation to Reduce Particulate Matter and Criteria Pollutant Emissions from In-Use Heavy-Duty Diesel Vehicles), and all policies of insurance relating to such vehicles. Debtor will make all vehicle modifications, including retrofitting and accelerated turnover modifications, as applicable, required to be made to be in compliance with such laws, regulations and insurance policies. No representations have been or are being made by Secured Party that the Equipment is in compliance with the foregoing requirements.

**5. Additional Representations.** Debtor hereby represents and warrants at all times during the Loan Term that: A) Debtor is duly organized, existing, qualified and in good standing in its jurisdiction of organization and in every jurisdiction where the nature of its business or the ownership of property makes qualification necessary, has the requisite power, authority and approval to execute, deliver and perform this Agreement and to own, operate and use the Collateral and to carry on its business as now being conducted; B) Debtor is not a party to any contract or agreement, charter, by-law or other organizational or governmental restriction which has a materially adverse effect on its business, property, assets or financial condition or conflict with, or result in a breach, constitute a default or require consent or notice under, any agreement, contract, instrument, order, judgment, decree, statute, law, role or regulation to which Debtor is subject or by which it is bound; and C) there are no liens for federal, state or local taxes and no judgments, law or equity suits, actions or proceedings pending or, to Debtor's knowledge, threatened against it or its properties, which have not been disclosed to Secured Party in writing.

**6. No Waiver**. Debtor acknowledges that TIME IS OF THE ESSENCE in the performance of Debtor's duties and obligations under this Agreement and no waiver by Secured Party of any breach or default shall constitute a waiver of any other breach or default by Debtor or waiver of any of Secured Party's rights. If Debtor fails to observe or perform any covenant or agreement contained in this Agreement, Secured Party may, in addition to any other remedy, take whatever action deemed necessary to remedy such failure and the amount of any expenditure by Secured Party regarding same shall become forthwith due and payable by Debtor, as well as any Loan installment payment or other amount that Debtor is required to pay under this Agreement which is not timely paid on the date when due, with interest thereon at the rate of 1½% per month (not to exceed the maximum amount permitted by applicable law) until repaid. If Secured Party takes any action authorized hereunder, Secured Party shall not be liable to Debtor for damages as a result of delays, temporary withdrawals of the Collateral from service or other damages.

**7. Events of Default.** Any one or more of the following shall constitute a default by Debtor (each an "Event of Default"): (A) failure to pay any installment of principal or of interest on the Obligations on the due date thereof or within five days thereafter; (B) death or judicial declaration of incompetency of Debtor or any Third Party (as hereafter defined); (C) failure by Debtor or any Third Party to comply with or perform any of the provisions of this Agreement, any other agreement between Debtor or any Third Party and Secured Party, or any subsidiary or affiliate thereof; (D) a false or misleading representation or warranty is made or given by Debtor in connection with this Agreement; (E) commencement of any insolvency proceedings by or against Debtor or any Third Party, including any assignment by Debtor or any Third Party for the benefit of creditors; (F) any reduction in the value of any of the Collateral (other than as a result of ordinary wear and tear from use permitted hereunder) or any act of Debtor which imperils the prospect of full performance or satisfaction of the Obligations; (G) any sale or other disposition of a controlling interest in Debtor or any Third Party or all or a substantial part of the assets of Debtor or any Third Party; (H) the merger, liquidation or dissolution of Debtor or any Third Party; or (I) failure to pay any other indebtedness for borrowed money of the Debtor when due. "Third Party" means any guarantor or other party who has guaranteed or who is otherwise liable for the payment of, or whose assets or any interest therein secure, any of the Obligations.

**8. Remedies.** Debtor agrees that whenever an Event of Default shall be existing Secured Party shall have the right to exercise one or more of the following remedies to the extent permitted by applicable law: (a) to declare all Obligations immediately due and payable in full, and, with respect to the Loan, Debtor shall pay any outstanding installments and other amounts then due plus the present value (utilizing a 6% per annum discount rate) of the remaining installments under the Loan (such total amount shall be called the "Total Amount Due") (computed as of the date of default), without notice or demand, and interest thereon shall thereafter accrue at a rate equivalent to 1½% per month (not to exceed the maximum amount permitted under applicable law); (b) to enter such place or places where any of the Collateral may be located and remove the same, by any of its representatives, with or without legal process and without liability to Debtor for any damage caused thereby, to Secured Party's place of storage; (c) to sell the Collateral at public or private sale, whether or not the Collateral is present at such sale and whether or not the Collateral is in constructive possession of Secured Party or the person conducting the sale, in one or more sales, as an entirety or in parcels, upon such terms as Secured Party may deem desirable; (d) to require Debtor, and Debtor agrees, to pay all expenses of such sale, taking, keeping, insuring and storage of the Collateral, including reasonable attorneys' fees; (e) to apply the proceeds of such sale to all expenses referenced in clause (d), and any balance of such proceeds toward the payment of the Obligations in such order of application as Secured Party may from time to time elect; (f) to require Debtor to make the Collateral available to Secured Party at a place designated by Secured Party; and (g) to exercise any one or more rights or remedies accorded by the Uniform Commercial Code as in effect from time to time ("Uniform Commercial Code") or other applicable law. Debtor agrees that any required notice by Secured Party of sale, disposition, or other intended action hereunder or in connection herewith shall constitute reasonable notice to Debtor, if such notice is sent to Debtor at least ten (10) days prior to such action, in a manner for providing notices as provided in Section 14 hereof. If the proceeds of any such sale are insufficient to pay the expenses, as aforesaid, and the Obligations (including the Total Amount Due), Debtor agrees to pay any deficiency to Secured Party upon demand and if such proceeds are more than sufficient to pay such expenses and Obligations (including the Total Amount Due), Secured Party agrees to pay the surplus to Debtor. Secured Party's rights and remedies specified in this Agreement are in addition to and not in limitation of any other rights and remedies Secured Party may have under any other instrument or agreement or pursuant to applicable law. In addition, Secured Party reserves the right to, and will in its discretion, report delinquencies to credit bureaus.

**9. Insurance and Casualty.** Debtor shall obtain and maintain during the Loan Term Special Form property insurance on the Collateral on an all-risk basis against all loss or damage and such other hazards and liabilities as Secured Party may require and naming Secured Party, and its successors and assigns, as loss payee with respect to property damage insurance. Debtor shall also carry a comprehensive general liability insurance policy or other similar form of third party liability coverage. Policies shall be in such form, amounts and deductibles and with such insurance companies as Secured Party may approve; provided, however, that the amount thereof shall be at least equal to the Casualty Value (as hereinafter defined) of the Collateral (or such greater amount as necessary to avoid the effect of a co-insurance clause). Policies shall be obtained from responsible insurers authorized to do business in the State within which Collateral is to be located. Evidence of such insurance, satisfactory to Secured Party, shall be delivered to Secured Party immediately upon request. Each such policy of insurance shall provide that the insurance company shall give Secured Party thirty (30) days prior written notice of the effective date of any alteration or cancellation of such policy. If Debtor does not provide evidence of such insurance as aforesaid, Secured Party may obtain insurance from an insurer of Secured Party's choosing in such forms and amounts as Secured Party deems reasonable to protect Secured Party's interest in the Collateral ("Required Insurance"). Required Insurance covers the Collateral and the Secured Party and will not name Debtor as an insured. To the extent allowed by law, Debtor agrees to pay Secured Party periodic charges for Required Insurance ("Insurance Charges") that include: a premium that may be higher than if Debtor maintained Required Insurance separately; a finance charge of up to 1.5% per month on any premium advances made by Secured Party or Secured Party's agents; and billing and processing fees; each of which may generate a profit to Secured Party and Secured Party's agents. If Debtor fails to pay billed Insurance Charges within 30 days of their due date, Secured Party may pay them by applying funds paid under this Agreement or debiting Debtor's account under any previously authorized automatic payment. Secured Party shall discontinue billing Insurance Charges upon receipt of satisfactory evidence of Required Insurance having been obtained by Debtor. Debtor shall give immediate written notice to Secured Party and to each insurer of loss or damage to the Collateral and shall promptly file proofs of loss with each such insurer. Debtor hereby assigns to Secured Party any and all monies (including but not limited to, proceeds of insurance, return or unearned premiums) which may become due under any policy insuring the Collateral against any loss or damage and Debtor shall direct the insurance company issuing such policy to make payment thereof directly to Secured Party. Secured Party may, at its option, apply any insurance monies so received to the cost of repairs to the Collateral and/or to payment of any of the Obligations, in such order as Secured Party may determine, whether or not due, and shall remit any surplus to Debtor. Debtor hereby authorizes and irrevocably appoints Secured Party as Debtor's attorney-in-fact, with full power of substitution coupled with an interest, to receive all such monies, to execute proofs of claim, to endorse checks and other instruments for the payment of money payable to Debtor in payment of such insurance claims, to adjust and compromise any claim and to execute releases. In the event of a total loss or destruction of the Collateral ("Casualty") which is not replaced by Debtor (with and subject to Secured Party's written consent) with like kind Collateral of equal or greater value acceptable to

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Secured Party, Debtor shall be required to prepay, upon demand by Secured Party, the Total Amount Due computed as of the date of Casualty plus interest thereon from the date of the Casualty until the date of payment at a rate equivalent to 1½% per month (not to exceed the maximum amount permitted under applicable law) (collectively the "Casualty Value"). If only part of the Collateral suffers a Casualty, the Total Amount Due for purposes of determining the Casualty Value for the Collateral suffering the Casualty shall be prorated based upon the original cost of such Collateral and, upon payment of such Casualty Value, the remaining Loan installments shall be pro rata reduced.

**10. Authorizations.** If at the time of repossession, any of the Collateral contains other personal property not included in or an accession to the Collateral, Secured Party may take such personal property into custody and store it at the risk and expense of Debtor. Debtor shall indemnify Secured Party from any claims or damages arising therefrom. Debtor agrees, in the event the Obligations or any portion thereof are collected by law or through an attorney at law, to pay all of Secured Party's costs of collection, including, without limitation, reasonable attorneys' fees. Debtor hereby authorizes Secured Party to file one or more financing statements pursuant to the Uniform Commercial Code evidencing its interest in the Collateral. Debtor also hereby authorizes and irrevocably appoints Secured Party as Debtor's attorney-in-fact, with full power of substitution, coupled with an interest, to execute motor vehicle title documentation necessary to obtain title certificates and/or lien notation in the name of Secured Party.

**11. Binding Effect.** This Agreement shall be binding, jointly and severally, upon all parties described as Debtor, and upon their successors and assigns.

**12. Waivers.** Debtor waives presentment, demand, dishonor, protest, diligence, notice of acceptance of this Agreement or of action taken in reliance hereon and all other demands and notices of any description, except as otherwise expressly provided for in this Agreement. Debtor assents to any substitution, exchange or release of any other property or collateral security for the Obligations, to the addition, substitution (including by assignment of Debtor's rights and interests in the Collateral and hereunder) or release of any entity or person primarily or secondarily liable hereunder and to the acceptance of partial payment thereon and the settlement, compromise or adjustment of any of the foregoing and to any other indulgence, all in such manner and at such time or times as Secured Party may deem advisable, and all without affecting the liability and Obligations of Debtor to Secured Party hereunder. Secured Party may exercise its rights with respect to the Collateral without resort or regard to other collateral or other parties liable with respect to all or part of the Obligations. No delay or omission on the part of Secured Party in exercising any right shall operate as a waiver of such right or any other right. A waiver on any one occasion shall not be construed as a bar or waiver of any right on any future occasion.

**13. Further Assurances.** Debtor further agrees: (A) that Secured Party may correct patent errors in this Agreement and fill in such blanks as serial numbers, dates, and the like in this Agreement, including those in the box at the top of this Agreement; and (B) that, if requested by Secured Party, Debtor shall, within 120 days of the end of each fiscal year, deliver to Secured Party financial statements and such other financial information (including tax returns) in such form, content and frequency as Secured Party may reasonably require, and Debtor hereby grants to Secured Party the right to examine and audit the books of the business of Debtor at any reasonable time.

**14. Entire Agreement, Notices.** This Agreement is the entire agreement between the parties, and no alterations, modifications, amendments or waivers of any provisions hereof shall be binding or of any force and effect as against Secured Party, unless in writing and signed by Secured Party. Only one copy of this Agreement is being executed by Debtor and it shall be delivered to Secured Party and shall constitute the original for chattel paper purposes. All notices shall be given in writing by the party sending the notice and shall be effective when deposited in the U.S. Mail or a nationally recognized overnight delivery service, addressed to the party receiving the notice at its address shown on the front of this Agreement (or to any other address specified by that party in writing) with postage prepaid or when delivered by email or text message to the party receiving such notice at an email address or text message number provided by the party receiving such notice. Debtor also consents to receiving other notifications and communications from Secured Party (including payment requests) by email and text message and any emails and text messages delivered by Debtor to Secured Party shall be valid and binding upon Debtor.

**15. Termination Fee.** In the event that the Collateral includes any vehicles, Debtor shall also pay to Secured Party, with Debtor's final Loan Payment hereunder, a Loan termination processing fee of $375 for each vehicle constituting Collateral hereunder to cover administrative, title and other costs.

**16. Assignment.** Without notice to or consent from the Debtor, Secured Party may assign or otherwise transfer this Agreement and/or the Collateral and any and all of its rights, title and interests thereunder. In the event of such assignment, the obligation of Debtor to pay (and the right of the assignee to receive) all amounts payable hereunder, as well as any other right of the assignee, shall be absolute and unconditional and not be subject to any defense, set-off or counterclaim that Debtor may have against the Secured Party or any other person. Debtor may not assign its obligations hereunder without the prior written consent of Secured Party.

**17. Governing Law, Jurisdiction, Adjudication.** (a) Secured Party and Debtor agree that the validity, enforceability and effectiveness of each provision of this Agreement shall be governed by and construed in accordance with the laws of the **State of California** (excluding its choice of law rules). If any one or more provisions hereof are in conflict with any applicable statute or law, and thus not valid or enforceable, then each such provision shall be deemed null and void, but only to the extent of such conflict and without invalidating or affecting the remaining provisions hereof. Debtor hereby agrees that service of process upon it by Secured Party, sent by certified mail, return receipt requested, to Debtor's last known address, shall be valid and effective service of process upon Debtor, which service shall be deemed to have been made when deposited in or at a U. S. Postal Service depositary. Debtor further agrees to the sole venue and jurisdiction of any court in the **State of California and County of Los Angeles** for all actions, proceedings, claims, counterclaims or cross-claims arising directly or indirectly out of, under, in connection with, or in any way related to this Agreement, whether based in contract or in tort or at law or in equity, or pursuant to statute with the sole exceptions that an action to obtain possession of all or part of the Collateral or any other asset of Debtor, however denominated, and equitable and legal proceedings to enforce the terms of this Agreement, may, in the sole discretion of Secured Party, be brought in a State or Federal court having jurisdiction over the Collateral, and/or such other assets and/or Debtor, as the case may be. Debtor waives any right it may have to transfer or change the venue of any litigation brought in accordance herewith. **To the maximum extent permitted by law, Debtor and Secured Party hereby knowingly, voluntarily and intentionally waive (a) any and all right to a trial by jury of any and all claims, defenses, counterclaims, cross-claims and setoff, recoupment claims or causes of action ("Claims") arising, directly or indirectly out of, under, in connection with or in any way related to this Agreement or any Collateral, and whether based in contract or tort or pursuant to statute, and (b) any and all right to claim or recover any punitive or consequential damages or any damages other than, or in addition to, actual damages**. If the foregoing waiver of jury trial is not upheld, then in lieu of a jury trial, the parties elect to proceed under this Judicial Reference Provision and agree that any and all Claims will be resolved by a reference proceeding in California pursuant to Sections 638 et seq., of the California Code of Civil Procedure, or the successor sections, which shall constitute the exclusive remedy for the resolution of any Claim, including whether the Claim is subject to reference. Venue for the reference will be Superior Court in the above referenced County or where venue is otherwise appropriate under law (the "Court"). The following matters shall not be considered Claims for purposes of this Section and shall not be subject to reference: (i) nonjudicial foreclosure of any security interests in real or personal property and enforcement of Secured Party's other remedies upon an Event of Default including self-help and set-off remedies, (ii) appointment of a receiver, and (iii) temporary, provisional or ancillary remedies (including writs of attachment or possession, temporary restraining orders or preliminary injunctions). The exercise of, or opposition to, any of the above does not waive the right to a reference hereunder. The referee shall be selected by agreement of the parties. If the parties do not agree, upon request of any party, a referee shall be selected by the Presiding Judge of the Court. The referee shall determine all issues in accordance with existing case law and statutory law of the State of California, including without limitation the rules of evidence applicable to proceedings at law. The referee is empowered to enter equitable and legal relief, and rule on any motion which would be authorized in a court proceeding, including without limitation motions for summary judgment or summary adjudication. The referee shall issue a decision, and, pursuant to California Code of Civil Procedure Section 644, the referee's decision shall be entered by the Court as a judgment or order in the same manner as if tried by the Court. The final judgment or order from any decision or order entered by the referee shall be fully appealable as provided by law. The parties reserve the right to findings of fact, conclusions of law, a written statement of decision, and the right to move for a new trial or a different judgment, which new trial if granted, will be a reference hereunder. AFTER CONSULTING (OR HAVING THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF ITS CHOICE, EACH PARTY AGREES THAT ALL CLAIMS RESOLVED UNDER THIS REFERENCE PROVISION WILL BE DECIDED BY A REFEREE AND NOT A JURY.

(b) The parties agree that judicial reference pursuant to subsection (a) above is the preferred method of dispute resolution of all Claims, when available. With respect to any Claim brought in a forum other than a California state court, or brought in the Court, but where judicial reference pursuant to the provisions above is not available or not enforced by the Court, these arbitration provisions shall apply to the Claim and the parties agree that, at the request of either party, such Claim shall be resolved by binding arbitration. Such Claim shall be governed by the laws of the State of California without

The original document is owned by North Mill Equipment Finance LLC and this copy was created on Jan 04, 2023 01:42:26 PM.

24-52523-mmp Doc#131-2 Filed 12/08/25 Entered 12/08/25 12:05:09 Exhibit NM-B Pg 5 of 5

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

regard to its conflicts of law principles. The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "Act"), shall apply to the construction, interpretation, and enforcement of these arbitration provisions, as well as to the confirmation of or appeal from any arbitration award. Arbitration proceedings will be determined in accordance with the Act, the then-current Commercial Finance rules and procedures of the American Arbitration Association or any successor thereof ("AAA") and the terms hereof. The arbitration shall be administered by the parties and not the AAA and shall be conducted, unless otherwise required by law, at a location selected by the Secured Party. All issues shall be heard and determined by one neutral arbitrator. The arbitrator shall have experience with commercial financial services disputes and shall be selected pursuant to the AAA "Arbitrator Select: List and Appointment" process.

**18. Usury Savings Provision.** *The parties hereto hereby acknowledge that Secured Party is exempt from usury in California because it holds a valid California Finance Lender License. If, notwithstanding the foregoing, the interest rate set forth herein is deemed by a court of competent jurisdiction to be in excess of the maximum rate allowed to be charged by Secured Party pursuant to applicable law (the "Maximum Lawful Rate"), or if the Secured Party shall receive monies that are deemed to constitute interest that would increase the effective rate of interest payable hereunder to a rate in excess of the Maximum Lawful Rate, then: (1) the amount of interest that would otherwise be payable hereunder shall be reduced to the Maximum Lawful Rate and (2) any interest paid by the Debtor in excess of the Maximum Lawful Rate shall, at the option of the Secured Party, be either refunded to the Debtor or credited against the principal of the indebtedness hereunder.*

**19. Miscellaneous.** *(a) Debtor hereby ratifies and approves the obtaining by Secured Party of any credit report relating to Debtor and agrees that Secured Party may hereafter obtain such credit reports as it in its sole discretion may determine and may provide copies of same to any of Secured Party's financing sources or any assignee under Section 16 hereof. All telephonic communications between Debtor and Secured Party are subject to recording by Secured Party and Debtor acknowledges and consents to same.*
*(b)This Agreement may be executed by electronic signature, which shall be considered as an original signature for all purposes and shall have the same force and effect as an original signature to the fullest extent permitted by applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any similar state law based on the Uniform Electronic Transactions Act, and the parties hereby waive any objection to the contrary. Without limitation, "electronic signature" shall include faxed versions of an original signature or electronically scanned and transmitted versions (e.g., via pdf) of an original signature. This Agreement (and the transaction hereunder) is not completed or effective until both (a) this Agreement and all related documents are executed by Debtor and delivered to Secured Party at its executive offices for final approval and then (b) executed at such offices by a duly authorized officer of Secured Party.*

### Schedule A (Collateral):

| Year | Make | Model | Description | VIN / Serial# |
|---|---|---|---|---|
| 2019 | L & G | #5 45 Ton | Punch Press | N/A |
| 2020 | Grizzly | G0886 | Saw | N/A |

### CERTIFICATE OF ACCEPTANCE

The undersigned Debtor hereby acknowledges receipt, in good condition, of the Collateral described in the Security Agreement _____ 6338 or on any schedule thereto (the "Collateral") and unconditionally accepts the same in accordance with all of the terms and conditions of said Security Agreement ("Agreement"). If the Acceptance Date is left blank on the first page hereof, Debtor hereby authorizes Secured Party to fill in the date verified by Secured Party as the date that the Collateral is delivered to Debtor and is operational in accordance with applicable manufacturer specifications. The date filled in by the Secured Party shall be conclusive evidence of the Acceptance Date for all purposes of this Certificate and the Security Agreement.

Debtor has selected, and requested that Secured Party finance, under the Agreement, Debtor's purchase of the Collateral from one or more vendor(s). If the Collateral is not properly installed, does not operate as represented or warranted by said vendor(s), or is unsatisfactory for any reason, Debtor shall make any claim on account thereof solely against said vendor(s) and shall nevertheless pay Secured Party all amounts payable under the Agreement and shall not attempt to set off against Debtor's obligations any such claims as a defense, counter-claim, set-off, or otherwise.

Debtor represents and warrants that none of the Collateral was delivered prior to the date the undersigned executed the Agreement unless Secured Party shall have previously consented thereto, in writing. Debtor understands that Secured Party is relying upon this certificate as a condition for making payment for the cost of the Collateral to the vendor(s) and Debtor hereby authorizes Secured Party to make such payments to vendor(s) in the aggregate amount of $25,480.00 as well as payment to Secured Party of any documentation fee being financed by Debtor under the Security Agreement.

DEBTOR AGREES THAT THE COLLATERAL IS ACCEPTED "AS IS" AND THAT SECURED PARTY HAS MADE NO REPRESENTATION OR WARRANTY WITH RESPECT TO THE SUITABILITY OR DURABILITY OF THE COLLATERAL FOR THE PURPOSES AND USES OF DEBTOR, OR ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT THERETO, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

DEBTOR: Ancora Services Corporation

AUTHORIZED SIGNATURE: *Carlos Michael Arteaga* (DocuSigned by: 4F212D88DF51451...)

DATE: 12/27/2022